CASE NO. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT


## IN RE: JENNIFER SMITH


## PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES
## DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA
## No. 6:24-cv-00457

_____

Jennifer Smith
Florida Bar No. 964514 (*pro se*)
Law Office of Jennifer Smith
13506 Summerport Village Pkwy., Suite 108
Windermere, FL 34786
407-455-0712 (phone); 407-442-3023 (facsimile)
jensmithesq@aol.com
jensmithesq@yahoo.com (secondary)

Petitioner *pro se*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26-1, Petitioner hereby files this Certificate of Interested Persons and Corporate Disclosure Statement:

1.    Jennifer Smith, Plaintiff/Petitioner;

2.    Florida Agricultural & Mechanical University (FAMU), Defendant/Respondent;

3.    Maria Santoro, counsel for Respondent FAMU;

4.    Teresa Ward, counsel for Respondent FAMU;

5.    Sniffen & Spellman, P.A., Law Firm for Respondent FAMU;

6.    Gray Robinson, P.A., former counsel for Respondent FAMU;

7.    Richard Mitchell, former counsel for Respondent FAMU;

8.    Julie Zolty, former counsel for Respondent FAMU;

9.    Sarah Reiner, outside counsel for Respondent FAMU in another matter;

10.    Paul G. Byron, U.S. District Judge for the Middle District of Florida, Orlando Division;

11.    Robert M. Norway, U.S. Magistrate Judge for the Middle District of Florida, Orlando Division;

C1

12.    Appellant Jennifer Smith knows the Honorable Charles R. Wilson and the Honorable Robin Rosenbaum and believes their involvement with the case may be a conflict.

/s/ Jennifer Smith

# **<u>TABLE OF CONTENTS</u>**

Certificate of Interested Persons and Corporate Disclosure Statement…    C1

Table of Authorities …………………………………………………….    2

Statement of Relief Sought ……………………………………………    6

Issues Presented ……………………………………………………….    7

Facts Necessary to Understand the Issues ………………………….    7

Reasons Why the Writ Should Issues …………………………………    17

    I.    Petitioner has no other adequate means because the district court has evaded issuance of an appealable final order ………………    17

    II.    Petitioner has a clear and indisputable right to a writ because the district court's mismanagement of this case amounts to an abuse of discretion. …………………………………….....................................    19

        A. The district court abused its discretion by failing to rule on pending motions and hold a hearing on the preliminary injunction motion. …………………………….............................................    19

        B. The district court abused its discretion by impermissibly rewriting the Local Rules to contradict the Federal Rules of Civil Procedure…………………………………….................    22

        C. The district court's mismanagement of the case amounts to an abuse of its discretion because it applied the wrong legal standard in *sua sponte* querying the sufficiency of service of process and rejecting an unopposed motion for an extension of time that caused a substantial delay in this case………………………………..    26

    III.    The Writ is Appropriate Under the Circumstances ……………    30

    IV.    This Case Should Be Reassigned ………………………….    31

# TABLE OF AUTHORITIES

## CASES

*Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315 (11th Cir. 2024) ................................................................................................25

*All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.,* 887 F.2d 1535 (11th Cir. 1989).............................................................................................. 20, 21, 22

*Assaf v. University of Texas System*, 399 F. Supp. 1245 (S.D. Tex. 1975), *appeal dismissed and vacated on other grounds*, 435 U.S. 992 (1978)………………………………………………………………………….14, 31

*Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167 (11th Cir. 1988) ........................21

*Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852 (11th Cir. 2010) …………………………………………………………………………….. 26, 27

*Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Ford Motor Co.)*, 471 F.3d 1233 (11th Cir. 2006) ....................................................................................18

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) …………...………..17

*Brooks v. Cent. Bank of Birmingham*, 717 F.2d 1340 (11th Cir. 1983)……... 23, 36

*Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002 (11th Cir. 1992) …………….… 23

*Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567 (5th Cir. 1974)………….31

*Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848 (11th Cir. 1996)………...29

*Cheney v. U.S. Dist. Court for DC*, 542 U.S. 367 (2004) ………………..……17

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) .. 19, 26, 32, 33

*Clarke v. CFTC,* 74 F.4th 627 (5th Cir. 2023)…………………………………....18

*Colgrove v. Battin*, 413 U.S. 149 (1973)…………………………………….... 22

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337 (11th Cir. 2009)......................................................................................................................28

*Crump v. Hill*, 104 F.2d 36 (5th Cir. 1939).………...………………………...…. 24

*Drummond Co. v. Collingsworth*, 816 F.3d 1319 (11th Cir. 2016) …………...……19

*Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305 (11th Cir. 2019) ……...………………………………….................................................... 24

*Fideicomiso De La Tierra Del Cano Martin Pena v. Fortuno*, 582 F.3d 131 (1st Cir. 2009)...........................................................................................................19

*Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205 (11th Cir. 2003) ........................................................................................... 20, 22

*Fuller v. Carollo*, 977 F.3d 1012 (11th Cir. 2020) ...................................................18

*In re BayCare Medical Group, Inc.*, 101 F.4th 1287 (11th Cir. 2024).17, 26, 30, 31

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021)...........................................................................................................34

*In re Fort Worth Chamber of Com.*, 100 F.4th 528 (5th Cir. 2024)............. 6, 18, 20

*In re School Asbestos Litig.,* 977 F.2d 764  (3d Cir.1992) ......................................20

*In re Temple*, 851 F.2d 1269 (11th Cir. 1988). ......................................................19

*Ingram v. Ault*, 50 F.3d 898 (11th Cir. 1995) ........................................................18

*Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997) .......... 16, 17

*Jones v. Alexander*, 609 F.2d 778 (5th Cir. 1980). .................................................17

*Kaimowitz v. Orlando, Fla.*, 122 F.3d 41 (11th Cir.), *opinion amended on reh'g,* 131 F.3d 950 (11th Cir. 1997)...................................................................21

*Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257 (11th Cir. 1988).…………...……………………….....……………………………………… 26

*McCoy v. La. State Bd. of Educ.*, 332 F.2d 915, 916–17 (5th Cir. 1964).…………18

*McDonald's Corp. v. Robertson,* 147 F.3d 1301 (11th Cir.1998) ..........................20

*Middleton-Keirn v. Stone,* 655 F.2d 609, 612 (5th Cir. 1981)..................................31

*Perez v. Wells Fargo N.A.*, 774 F.3d 1329  (11th Cir. 2014) ..................... 27, 28, 29

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ... 27, 29, 30

*Sierra Club v. Van Antwerp*, 526 F.3d 1353 (11th Cir. 2008)................................36

*Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.,* 809 F.3d 1171 (11th Cir. 2015).* ..............................................................................................................35

*Stelly v. Emp'rs Nat'l Ins. Co.*, 431 F.2d 1251 (5th Cir. 1970) ...............................18

*United States v. Lynd*, 301 F.2d 818, 820 (5th Cir. 1962)…………………………...18

*United States v. Torkington*, 874 F.2d 1441 (11th Cir. 1989)…………………….......................................................................... 33, 34, 35

*United States v. Yesil*, 991 F.2d 1527 (11th Cir. 1992) ..........................................32

*Valdez v. Feltman (In re Worldwide Web Sys.)*, 328 F.3d 1291 (11th Cir. 2003)...27

**STATUTES**

29 C.F.R. § 1620.27 ................................................................................................21

28 U.S.C. § 636.......................................................................................................34

28 U.S.C. § 1292.....................................................................................................19

28 U.S.C. § 1651 ......................................................................................................6

28 U.S.C. § 2072.....................................................................................................22

28 U.S.C. § 2106.....................................................................................................32

42 U.S.C. § 2000 .............................................................................................. 21, 24

**RULES**

Federal Rule of Appellate Procedure 21 ....................................................................37

Federal Rule of Appellate Procedure 25 ....................................................................37

Federal Rule of Appellate Procedure 32 ....................................................................37

Federal Rule of Civil Procedure 1 ............................................................ 23, 24, 25

Federal Rule of Civil Procedure 6 ............................................................ 27, 28, 29

Federal Rule of Civil Procedure 12 ..........................................................................30

Federal Rule of Civil Procedure 15 ........................................................... 23, 24, 34

Federal Rule of Civil Procedure 24 ..........................................................................24

Federal Rule of Civil Procedure 55 ................................................................ 27, 28

Federal Rule of Civil Procedure 61 ............................................................... 23, 25

Federal Rule of Civil Procedure 65 ............................................................... 23, 25

Federal Rule of Civil Procedure 83 ..........................................................................22

Middle District of Florida Local Rules (2009) ........................................................23

Middle District of Florida Local Rules (2021) ........................................................25

Middle District of Florida Local Rules (2024) ........................................................25

## STATEMENT OF RELIEF SOUGHT

Petitioner Jennifer Smith submits this petition for a writ of mandamus to request this Court compel the district court to reinstate the Corrected Second Amended Complaint, promptly hold a hearing and rule on Petitioner's third motion for a preliminary injunction, and order reassignment of the district court case to ensure a fair and impartial proceeding.[1] The district court allowed the second motion for a preliminary injunction to languish for 99 days before dismissing it as moot after Petitioner amended her complaint. The third preliminary injunction, which is substantially identical to the second, has now been pending for 30 days. Recently, the district court struck Petitioner's amended complaint because during the procedural delays of 25 days Petitioner refined her complaint, resulting in a final version that differed from the originally proposed one. The district court's failure to act on the preliminary injunction effectively amounts to a denial without an appealable order. *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 533 (5th Cir. 2024). Because Petitioner has exhausted all other options to seek restoration of the status quo ante, she now promptly petitions for a writ of mandamus under the All Writs Act. *See* 28 U.S.C. § 1651.

---

[1] Petitioner titled the third Preliminary Injunction as 'time-sensitive," so that the district court would rule before the fall classes began on August 12, 2024.

**THE ISSUES PRESENTED**

1.  Whether the trial court abused its discretion and failed to exercise its authority by not ruling on the Petitioner's third motion for a preliminary injunction.

2.  Whether the case should be reassigned to another district judge and magistrate judge to ensure impartiality and the proper administration of justice.

**FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED BY THE PETITION**

**Petitioner's Background**

After clerking for a judge on the Eleventh Circuit, Petitioner Jennifer Smith worked for a big law firm for ten years before teaching at Respondent FAMU's College of Law in 2004. (District Court Docket ("DC. Dkt.") 84-21 at 1-2, 6).[2] Consistently, Petitioner a tenured full professor, has been evaluated as excellent in teaching, scholarship and service. (DC. Dkt. 86-1; 84 at ¶¶ 24-25; 86-5 at ¶ 4; 86-19 at ¶ 4). Petitioner's legal actions have led to significant improvements in gender pay equity and promotions at the law school. (DC. Dkt. 86-1 at 6).

**Petitioner's Previous Lawsuits for Equal Pay**

In 2014, Petitioner filed her first lawsuit against Respondent FAMU [hereinafter, "*Smith I*"] alleging that the school discriminated against female law professors by paying them less than comparable male law professors. (DC. Dkt. 17-

---

[2] Several orders (DC Dkt. 25, 31, 34, 82, 85, 124) are "paperless" or "endorsed"; thus, Petitioner has attached a true and accurate copy of the docket sheet as Ex. A.

7). In 2015, amid-*Smith I*, Respondent FAMU recognized a gender inequity of up to $20,000 in its law faculty salaries in its Office of Institutional Research report. (DC. Dkt. 84 at ¶ 27; 84-2 at 3, 10, 13).

In 2015, after trial counsel surprisingly waived rebuttal, *Smith I* reached a jury verdict that found sex was not a motivating factor in the determination of Smith's salary. (DC. Dkt. 17-4 and 17-7). In 2016, as a catalyst resulting from Petitioner's lawsuit, Respondent FAMU made significant changes to faculty salaries that created *inter alia* a lockstep salary structure. (DC. Dkt. 84 at ¶ 28).

Defendant FAMU's law school leadership reset mostly women's salaries and, in that process, Petitioner was recommended to receive a salary of $138,000, but that recommendation was ultimately reduced to $125,000. (DC. Dkt. 17-7). Because of the incredulous nature of salary reset, Petitioner filed her second lawsuit against Respondent FAMU [hereinafter, "*Smith II*"]. (DC. Dkt. 17-7). *Smith II* was resolved by an Eleventh Circuit panel affirming the trial court's summary judgment order in favor of FAMU, on grounds that Petitioner's pay claims were simply carry forwards of *Smith I* since Respondent FAMU made no changes to the male comparator's or Petitioner's salary that would suggest that the current disparity between them is based on sex in any way. (DC. Dkt. 17-7; *see also* 17-8).

**Background on the Underlying Pretext and Conspiracy**

On August 9, 2021, Respondent FAMU hired a less qualified male professor, Ewanrinareto "Areto" Imoukhuede, as a tenured full professor at the College of Law, in a similar position to the one held by Petitioner. (DC. Dkt. 84 at ¶ 29). The new hire received a salary significantly higher than Petitioner's, approximately $25,000 more than what would have been expected under the existing lockstep model. (DC. Dkt. 84 at ¶ 31). Upon discovering this pay disparity, Petitioner emailed FAMU's then-president, Dr. Larry Robinson, on May 9, 2022, expecting relief. (DC. Dkt. 84 at ¶ 38).

Between June 28 and September 22, 2022, Petitioner engaged in FAMU's informal complaint process to report her concerns to its Equal Opportunity Program (EOP), but this did not yield any results. (DC. Dkt. 84 at ¶¶ 39-40). Consequently, on October 18, 2022, she filed a Charge of Discrimination with the U.S. EEOC under the Equal Pay Act (EPA). (DC. Dkt. 84 at ¶ 38).

Around the same time, concerns about faculty safety in the nation had been escalating with enraged, entitled students. (DC. Dkt. 84 at 2). In this context, On October 20, 2022, an enraged student, Michelle Wanamaker Sadiki ("MW") disrupted Petitioner's class, leading to a complaint by Petitioner to Associate Dean of Students, Reginald Green. (DC. Dkt. 84 at ¶¶ 42-43). Green acknowledged the complaint and indicated that he would look into the matter. (DC. Dkt. 84 at ¶ 51).

Unbeknownst to Petitioner, a week after this incident, MW filed a complaint against Petitioner, accusing her of violence, assault, and bullying—allegations that were blatantly false and mischaracterized the encounter. (DC. Dkt. 84 at ¶ 45). MW admitted to being aware that Petitioner's class was in session but was upset that MW could not occupy the room to wait for her next class. (DC. Dkt. 84 at ¶ 43).

On November 1, 2022, Petitioner followed up on her complaint against MW by visiting Green's office, and Green's assistant, Teresa Pissini, assured Petitioner that she would inform Green of her visit. (DC. Dkt. 84 at ¶ 46). However, despite the seriousness of the complaint, the fall semester ended on November 18, 2022, without any further communication from Green, leading Petitioner to believe that FAMU had decided not to investigate. (DC. Dkt. 84 at ¶ 50). Respondent FAMU did nothing, not even seek to preserve video evidence. (DC. Dkt. 84 at ¶ 56)

On January 26, 2023, nearly 100 days after Petitioner initially reported the incident and just 16 days after she submitted her rebuttal to the EEOC regarding the pay disparity, Respondent FAMU, through La'Tonya Baker, contacted Petitioner to initiate an urgent investigation into the MW incident. (DC. Dkt. 84-19, 84-20). Petitioner was the sole focus of this investigation, despite her filing a complaint against MW.

Baker informed Petitioner that Green had violated FAMU regulations by failing to forward her complaint to the Compliance Department for investigation.

(DC. Dkt. 84 at ¶ 51). On February 1, 2023, Green admitted via email that he had considered Petitioner's text a complaint requiring an investigation. (DC. Dkt. 84 at ¶ 52). However, in a subsequent undated statement, Green contradicted this, claiming that he did not consider her text as a formal complaint. (DC. Dkt. 84 at ¶ 52).

Petitioner became concerned about the timing of the revived complaint, suspecting it was related to her recent protected activity. (DC. Dkt. 84-20). Despite the complaint's obvious falsities and inconsistencies, which, if believed, would have necessitated an immediate investigation under state and federal law and FAMU Regulations, Respondent FAMU chose to proceed with an extensive four-month investigation. The investigation ultimately found the student's complaint to be absolutely meritless but used it as a pretext to discipline Professor Smith in retaliation for her protected activity, and thus, Respondent FAMU manufactured a retaliation finding to create a false disciplinary record against Petitioner. (DC. Dkt. 84 at ¶ 57).

On March 9, 2023, Petitioner re-filed her original complaint, this time through the Compliance hotline, following the procedure that Green had failed to do. (DC. Dkt. 84 at ¶ 64). However, Compliance immediately deleted her resubmission. (DC. Dkt. 84 at ¶ 65). On March 13, 2023, Compliance arranged a meeting with the law deans and Petitioner concerning her re-filing, interpreting it as a new complaint now

that Green withdrew his statement that Petitioner's text to him about the incident was a complaint, and thus Respondent FAMU considered the re-filing retaliation against MW. (DC. Dkt. 84 at ¶¶ 68-69).

On June 5, 2023, FAMU issued a report (the "June Report") that found MW's complaint meritless but accused Petitioner of retaliation for re-filing her March 9 complaint. (DC. Dkt. 84 at ¶ 57). On June 12, 2023, Petitioner responded, detailing the retaliatory actions she had experienced and requesting relief. (DC. Dkt. 84-11). FAMU did not respond after Petitioner's memorandum. (DC. Dkt. 84 at ¶ 81).

On July 6, 2023, FAMU Compliance authored a secret, supplemental report (the "Secret Report"), which was not shared with Petitioner but circulated among various FAMU officials, including FAMU EOP and others involved in the initial investigation. (DC. Dkt. 84-6, p. 37). The Secret Report included communications Petitioner had shared during the investigation, labeling them as "gossip," but found no violations of FAMU policies. (DC. Dkt. 84-6, p. 40).

Petitioner continued to face harassing behavior from MW, leading Petitioner to express concerns about MW's behavior in an October 5, 2023 memorandum to Compliance. She noted MW's unusual fixation on Petitioner and raised concerns about both her safety and MW's mental well-being. (DC. Dkt. 84-6, p. 57). FAMU did not respond to this memo. (DC. Dkt. 84 at ¶ 88).

On November 13, 2023, Professor Reyes, another FAMU law professor who had an active lawsuit against Respondent FAMU (*Reyes v. FAMU*, No.: 6:22-cv-1525-WWB-DCI (M.D. Fla. 2022)), notified Gray Robinson, P.A. (via Sarah Reiner, Julie Zolty and Richard Mitchell – then counsel for FAMU and named as defendants in the Corrected Second Amended Complaint ("CSAC")) of Petitioner's complaint in Professor Reyes' federal court filing. (DC. Dkt. 84 at ¶ 91). Gray Robinson then notified Respondent FAMU, and together they began the process to terminate Professor Smith for seeking equal pay. (DC. Dkt. 84 at ¶ 92).

On December 5, 2023, Respondent FAMU notified Petitioner of its intent to terminate her employment, effective January 19, 2024, citing the finding of retaliation from the June Report, the Secret Report, and Petitioner's October 5, 2023 memorandum. (DC. Dkt. 84-6; DC. Dkt. 84 at ¶ 102). Petitioner requested a conference under FAMU Regulations, which took place on January 11, 2024 before a three member panel of lawyers chosen by Provost Allyson Watson (also a named Defendant in the CSAC). The panel recommended that FAMU rescind its intent to terminate Petitioner due to the lack of evidence of retaliation. (DC. Dkt. 84 at ¶¶ 106, 109, 112).

Despite this recommendation, Respondent FAMU untimely notified Petitioner of the panel's report on January 23, 2024, when it rejected the recommendation and cited a new reason for her termination—the "totality of the

13

circumstances." (DC. Dkt. 84-7). Petitioner pursued two internal appeals under FAMU's Regulations. Step One affirmed her termination, and Step Two has not yet issued a report. (DC. Dkt. 84 at ¶¶ 137, 146).

Since Petitioner's initial termination notice, Respondent FAMU has continued to change the reasons for the termination, has been unable to articulate its definition of retaliation or how Petitioner's conduct meets any definition of retaliation. (DC. Dkt. 84 at ¶¶ 73, 128, 129; 84-13). Audaciously, Respondent FAMU now relies on these contrived reasons of retaliation to distinguish this case from *Assaf v. University of Texas System*, 399 F. Supp. 1245, 1245-47 (S.D. Tex. 1975), *appeal dismissed and vacated on other grounds*, 435 U.S. 992 (1978) – a virtually identical case where a professor of "impeccable character" was granted a preliminary injunction – arguing that Petitioner now lacks such an impeccable background (unable to cite anything negative from her 20 years at the law school), and thus, the district court should not use *Assaf* as persuasive. (DC. Dkt. 125 pp. 12-13).

**Relevant District Court Proceedings**

On March 4, 2024, this case was removed from state court to the Middle District of Florida (Orlando Division). (DC. Dkt. 1). On March 6, 2024, Petitioner filed an emergency motion for a temporary restraining order ("TRO"), (DC. Dkt. 6), denied by the district court on March 8, 2024. (DC. Dkt. 10). On March 11, 2024, Petitioner moved for a preliminary injunction, (DC. Dkt. 11), later stricken by the

district court due to technicalities on March 29, 2024. (DC. Dkt. 34).  On March 13, 2024, Respondent FAMU filed an unopposed motion for an enlargement of time to file a "responsive pleading" to the complaint on or before March 29, 2024 (DC. Dkt. 16), denied by the district court on March 15, 2024 (DC. Dkt. 18), requiring the parties to fight over service for the next 79 days until May 31, 2024 when Respondent FAMU voluntarily accepted service of process. (DC. Dkt. 62).

On April 1, 2024, Petitioner filed a second motion for preliminary injunction, which remained pending without a hearing scheduled for 99 days. (DC. Dkt. 37, 46, 82)

On May 20, 2024, Petitioner filed a time-sensitive motion for extension of time to amend the complaint and add parties. (DC. Dkt. 54). On May 31, 2024, because the district court did not rule by this deadline, Petitioner re-filed her certification with the proposed amended complaint and requested that the district court instruct the clerk to docket her amended complaint.  (DC. Dkt. 65). Instead, the district court struck that with the proposed amended complaint. (DC. Dkt. 71). On June 18, 2024, Petitioner refiled the motion for an extension of time, attaching the proposed complaint. (DC. Dkt. 72). The complaint notified the district court in a footnote: *This pleading was updated from prior versions and since the initial complaint was filed in October 2023 based on Defendant FAMU's continued actions, intervening administrative hearings, and to ensure the accuracy of new facts and*

*circumstances."* (DC. Dkt. 72-1). On July 3, 2024, the Court granted Plaintiff's request to amend the First Amended Complaint on or before July 8, 2024. (DC. Dkt. 80). This was 25 days from when the district court allowed Petitioner to file an amended motion to file an amended complaint. (DC. Dkt. 71, 81). Petitioner filed the SAC on July 8, 2024 (DC. Dkt. 81), followed by the CSAC on July 9, 2024 because the paragraph numbering was a paragraph off. (DC. Dkt. 84). Also, on July 9, 2024, the district court mooted Petitioner's second preliminary injunction, pending since April 1, 2024. (DC. Dkt. 82). On July 10, 2024, the district court accepted the CSAC (DC. Dkt. 85), and Petitioner filed her third motion for preliminary injunction, which also remains pending without a hearing scheduled. (DC. Dkt. 86).

On July 24, 2024, the district court struck the SAC and CSAC for differing from the first proposed second amended complaint. Petitioner then renewed her motion to amend and file the CSAC, on which the third preliminary injunction relies. (DC. Dkt. 72, 81, 84, 132, 133). Thus, this case remains stalled and in its infancy stages with no operative complaint, impacting discovery, the third preliminary injunction and the court scheduling order, which Respondent FAMU indicated on July 25, 2024 its opposition to amend. (DC. Dkt. 45). Petitioner anticipated legal arguments and potential consequences, did everything to preserve her preliminary injunction, and served her discovery On April 26, 2024 at the earliest opportunity –

16

she has done everything possible to move this case forward, but to no avail. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) ("To some extent [writs] are supervisory in nature and are used to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.").

## REASONS WHY THE WRIT SHOULD ISSUE

This Court issues writs of mandamus "only in drastic situations, when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion." *Jackson*, 130 F.3d at 1004. A writ of mandamus is warranted if the petitioner satisfies three conditions. First, the petitioner must show that there are "no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004).[3] Second, the petitioner must show a "clear and indisputable right to the writ." *Id.* at 381. Third, the court "must be satisfied that the writ is appropriate under the circumstances." *Id.*; *see also In re BayCare Medical Group, Inc.*, 101 F.4th 1287, 1290 (2024); *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980). Petitioner satisfies all three conditions.

### I.    Petitioner has no other adequate means because the district court has evaded issuance of an appealable final order.

---

[3] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The first element is to ensure that "the writ will not be used as a substitute for the regular appeals process." *Cheney,* 542 U.S. at 381. The district court's inaction regarding the preliminary injunction has essentially denied the preliminary injunction but without an appealable order. The district court sat on Petitioner's motion for over four months. Sitting on a preliminary-injunction motion for too long is an effective denial. *In re Fort Worth,* 100 F.4th at 533 (citing *e.g., Clarke v. CFTC,* 74 F.4th 627, 635 (5th Cir. 2023) (three months); *McCoy v. La. State Bd. of Educ.,* 332 F.2d 915, 916–17 (5th Cir. 1964) (four months); *United States v. Lynd,* 301 F.2d 818, 820 (5th Cir. 1962) (eight months)).

The district court entered 17 orders that have maintained this case in a stalemate position since it began. (DC. Dkt. 18, 25, 31, 34, 40, 50, 53, 60, 66, 71, 80, 82, 85, 124, 132, 134, 135). Not a single order provides Petitioner with an immediate right to appeal. *See Ingram v. Ault,* 50 F.3d 898, 900 (11th Cir. 1995) (explaining denial of a TRO is not generally appealable absent certain conditions)[4]; *Stelly v. Emp'rs Nat'l Ins. Co.,* 431 F.2d 1251, 1254 (5th Cir. 1970) (finding that

---

[4] While the denial of a TRO is immediately appealable under the right circumstances, here, Petitioner's TRO sought to preserve the status quo, which, in essence, would have kept her off campus and in a grey area with her employment. Specifically, she had been paid, had health insurance, and remained on the university website - circumstances of which Respondent FAMU immediately changed after the TRO was filed. Thus, the TRO was unappealable, and Petitioner immediately moved for a preliminary injunction to restore the status quo ante to her last uncontested position before December 5, 2023.

district court's order quashing service is not final); *Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Ford Motor Co.)*, 471 F.3d 1233, 1260 (11th Cir. 2006) (finding district court's order striking a filing is not appealable); *Fuller v. Carollo*, 977 F.3d 1012, 1013 (11th Cir. 2020) (finding order granting leave to amend is not appealable); *Drummond Co. v. Collingsworth*, 816 F.3d 1319, 1322 (11th Cir. 2016) (providing discovery orders are generally not final orders). The district court's order striking the CSAC has delayed resolution of Petitioner's preliminary injunction indefinitely. Because the district court failed to rule on the third preliminary injunction and recently struck the operative pleading associated to which it relates "essentially mov[ing] the[] case[] back to square one," Petitioner has therefore established no other adequate means exist to review the district court's mismanagement. *See In Re Temple,* 851 F.2d 1269, 1271 (11th Cir. 1988).

## II. Petitioner has a clear and indisputable right to a writ because the district court's mismanagement of this case amounts to an abuse of discretion.

Petitioner has a clear and indisputable right to the writ for three reasons.

### A. The district court abused its discretion by failing to rule on pending motions and hold a hearing on the preliminary injunction motion.

The district court abused its discretion by refusing to rule on the now three times pending motion for preliminary injunction. *See* 28 U.S.C. § 1292 (a)("the courts of appeals shall have jurisdiction of appeals from [] orders of the district courts of the United States . . . **refusing** or dissolving injunctions. . ..”); *Chudasama*

*v. Mazda Motor Corp.*, 123 F.3d 1353, 13667 (11th Cir. 1997) ("Failure to consider and rule on significant pretrial motions … can be an abuse of discretion."); *Fideicomiso De La Tierra Del Cano Martin Pena v. Fortuno*, 582 F.3d 131, 134 (1st Cir. 2009) ("A district court may not deprive a party of judicial review by declining to rule"); *In re School Asbestos Litig.,* 977 F.2d 764, 792–93 (3d Cir.1992) (granting a writ of mandamus); *In re Fort Worth*, 100 F.4th at 533 (sitting on a preliminary injunction too long is a denial).

In addition, the district court abused its discretion in failing to hold a hearing on the now three times pending motion for preliminary injunction. A district court's decision not to hold a hearing on a motion for a preliminary injunction is reviewed for abuse of discretion. *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 n.7 (11th Cir.1998) (applying abuse of discretion standard to denial of a hearing on a preliminary injunction because it is inextricably intertwined.). This Circuit has explained that, "[w]hile an evidentiary hearing is not always required before the issuance of a preliminary injunction, 'where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held.'" *Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1211 (11th Cir. 2003); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.,* 887 F.2d 1535, 1538–39 (11th Cir. 1989). It has been further explained that the "extent to which a court is required to take oral

testimony in a hearing on a motion for a preliminary injunction, and the extent to which it may rely upon affidavits reflect a tension between the need for speedy action and the desire for certainty and complete fairness." *All Care Nursing Serv.,* 887 F.2d at 1538–39.

Here, a hearing should have, and still must, be had because this is substantially an employment discrimination case, so irreparable harm is presumed. *See Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir.), *opinion amended on reh'g,* 131 F.3d 950 (11th Cir. 1997) (finding evidentiary hearings are typically required before ruling on a motion for a preliminary injunction only when there is a presumption of irreparable harm, such as in a Title VII employment discrimination case); *See Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) ("In this circuit, however, courts are to presume irreparable harm in Title VII cases.").[5]

Notwithstanding the foregoing, a hearing is still required because Petitioner otherwise demonstrated irreparable harm based on her un-compensable reputational damage, lost employment opportunities, forfeiture of scholarly publications and ongoing scholarly commitments. (DC. Dkt. 86). Additionally,

---

[5] Petitioner's case is both EPA and Title VII; however, a violation of the EPA is a violation of Title VII. 29 CFR § 1620.27 ("In situations where the jurisdictional prerequisites of both the EPA and title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*, are satisfied, any violation of the Equal Pay Act is also a violation of title VII.").

certain key issues are bitterly contested. For example, Respondent FAMU offered six ever-changing reasons for terminating Petitioner from her tenured position as a law professor. (DC. Dkt. 84, ¶ 129). Not only does this violate Petitioner's due process and FAMU regulations, but it also concretely establishes that a hearing should be had to solidify and clarify the articulated reason for Petitioner's termination. *See All Care Nursing Serv., Inc,* 887 F.2d at 1538; *Four Seasons*, 320 F.3d at 1211. Moreover, Respondent FAMU never published a definition of "retaliation," yet used this undefined phrase as the basis for her termination. Whether Respondent FAMU has a standard, unchanged, universally applied definition of the term "retaliation" is, therefore, another concrete issue.

**B. The district court abused its discretion by impermissibly rewriting the Local Rules to contradict the Federal Rules of Civil Procedure ("FRCP").**

The district court abused its discretion by rewriting its local rules to froth the plain text of the FRCP substituting in requirements of its own personal taste, all with an eye to deny Petitioner the day in court the law promises her. 28 U.S.C. § 2072 authorized the creation of the FRCP. *Colgrove v. Battin*, 413 U.S. 149, 161 (1973). Rule 83 provides that "a district court . . . may adopt and amend rules governing its practice." Rule 83 further explains that "A local rule must be consistent with – but not duplicate – federal statutes and rules" Fed R. Civ. P. 83. If a federal district court creates its own local rules, they must not "circumvent the Federal Rules of Civil

Procedure by implementing local rules or 'procedures' which do not afford parties rights that they are accorded under the Federal Rules." *Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1008 (11th Cir. 1992).

Here, the district court wielded the local rules as a sword to prejudice Petitioner and circumvent FRCP 1, 15, 61, and 65 when the district court repeatedly struck Petitioner's motions and papers causing needless delay that amounted to a stalemate in the case. The most salient example occurred on July 24, 2024, when the district court struck Petitioner's CSAC because it was not the exact version of the copy proposed twenty-five days earlier. This Order effectively reinstated Local Rule 4.01 from the 2009 edition of the Middle District of Florida Local Rules,[6] by requiring Petitioner to have filed an exact copy of the proposed pleading. This order is a clear abuse of discretion because Petitioner is not required to file a proposed amended pleading under Rule 15, the Local Rules, or case law post-dating the applicable Local Rules (DC. Dkt. 133). The district court unnecessarily prolonged briefing on this issue, despite Petitioner diligently filing a proposed pleading, delaying the case to the point where it is effectively back to square one, much like in *Brooks v. Cent. Bank of Birmingham*, 717 F.2d 1340, 1343 (11th Cir. 1983) ("To date, the district court has not confronted the merits of [attorney's] motion to

---

[6]    L.R.    4.01    (2009    version),    available    at https://www.flmd.uscourts.gov/sites/flmd/files/local_rules/flmd-united-states-district-court-middle-district-of-florida-local-rules-before-february-1-2021.pdf.

withdraw, much less conducted a hearing as mandated …. In this stalemated posture, we have no alternative except to direct that the case be transferred to another district judge for a determination on the merits of the motion to withdraw."), and circumvented the clear command of Rule 15. *See generally, Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1322 (11th Cir. 2019) ("The district court effectively circumvented the mandates of both Rule 24(a) and § 2000e-5(f). That was error."). Additionally, Respondent FAMU's had no substantive right to be affected by Petitioner's refusal to provide a copy of her proposed amended pleading. Thus, in the absence of an express requirement in any rule, Petitioner was the only party prejudiced by the continued delay and lack of an operative pleading to which her motion for preliminary injunction is based. The former Fifth Circuit rejected an argument similar to the one argued by Respondent FAMU that a "former practice" requires a rigid application of rules in *Crump v. Hill*, 104 F.2d 36, 37-38 (5th Cir. 1939).

As a final note, the lower court judges substituted their own personal views and unwritten interpretation of the Local Rules in place of the Federal Rules, specifically FRCP 1 that adjures, "These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." In lieu of affording Petitioner the "just, speedy, and inexpensive" review of her case, the lower court judges rewrote

Local Rule 3.01(a)[7] and 3.01(g)[8] and they inappropriately applied a new Local Rule not yet effective to Petitioner retroactively.[9] Levying the Local Rules as an insurmountable embargo against Petitioner also circumvented Rule 61, which commands that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. The lower court judges clearly ignored this command and instead used any minor missteps by Petitioner as a Scarlett letter hanging it over her at every step of the proceeding to ensure she is aware her case is subject to dismissal at any time,

---

[7]    *Compare* L.R. 3.01(a) (2021 version), available at https://www.flmd.uscourts.gov/sites/flmd/files/local_rules/flmd-united-states-district-court-middle-district-of-florida-local-rules.pdf; *with* DC. Dkt. 31, 32 – **No prohibition against filing a consolidated motion and response existing herein. Therefore, a consolidated filing is not an embedded filing.** *See e.g., Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1335 (11th Cir. 2024) (finding that a request for leave to amend a pleading included in the last two pages of a document titled "Response" was embedded).

[8]    Compare L.R. 3.01(f) (2024 version), available at https://www.flmd.uscourts.gov/sites/flmd/files/documents/flmd-local-rules-of-the-united-states-district-court-for-the-middle-district-of-florida-with-amendments-effective-april-1-2024.pdf *with* Docs 65, 71.

[9]    *Compare* L.R. 3.01(f) (2021 version), available at https://www.flmd.uscourts.gov/sites/flmd/files/local_rules/flmd-united-states-district-court-middle-district-of-florida-local-rules.pdf; *and* L.R. 3.01(f) (2024 version), available at https://www.flmd.uscourts.gov/sites/flmd/files/documents/flmd-local-rules-of-the-united-states-district-court-for-the-middle-district-of-florida-with-amendments-effective-april-1-2024.pdf *with* DC. Dkt. 11, 34. **Therefore, the prohibition against incorporation by reference was not effective when applied to Petitioner.** This runs counter to the efficiency of FRCP 1 and the desire to avoid repetition of evidence and delay in the 1966 Amendment to FRCP 65.

notwithstanding the fact that she alleged concrete constitutional and statutory rights violations. Therefore, the district court has effectively mismanaged this case. *Chudasama,* 123 F.3d at 1366-67 ("When a litigant's rights are materially prejudiced by the district court's mismanagement of a case, we must redress the abuse of discretion.").

**C. The district court's mismanagement of the case amounts to an abuse of its discretion because it applied the wrong legal standard in *sua sponte* querying the sufficiency of service of process and rejecting an unopposed motion for an extension of time that caused a substantial delay in this case.**

The district court mismanaged this case by applying the wrong legal standard to Respondent FAMU's unopposed motion to file a responsive pleading (DC. Dkt. 16) – albeit out of time since Respondent FAMU was in default – and this misapplication and the delay resulting therefrom constitutes a clear abuse of discretion and entitles Petitioner to a writ. An error of law is a per se abuse of discretion. *In re BayCare Medical Group,* 101 F.4th at 1290. It is true that a district court may consider defects in personal jurisdiction *sua sponte. See Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1259 (11th Cir. 1988).[10] A district court cannot however apply the wrong standard when questioning whether it has personal

---

[10] "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process . . .Service of process is simply the physical means by which that jurisdiction is asserted." *See Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010).

jurisdiction. *See e.g., Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014) ("But a party's claims should not be subjected to default under a standard higher than that applicable to default.").

"A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Baragona,* 594 F.3d at 854 (alteration omitted). A defendant challenging a default is entitled to file an out of time answer under Rule 55's lenient standard. *See Perez v. Wells Fargo N.A.*, 774 F.3d at 1339. The district court analyzed Respondent FAMU's unopposed motion for an extension of time under FRCP 6 instead of FRCP 55. Unlike Rule 55, Rule 6 imposes a more rigorous standard that requires a showing of good cause and excusable neglect. *See id.* Thus, if the issue is generally filing a paper out-of-time, Rule 6 is applicable. If the issue is filing an out-of-time answer to avoid default judgment, Rule 55 is the relevant rule.

The determination of excusable neglect is an equitable one that considers a meritorious defense, prejudice, and a reason for not responding. *Valdez v. Feltman (In re Worldwide Web Sys.)*, 328 F.3d 1291, 1297 (11th Cir. 2003). "The determination of what type of neglect would be considered 'excusable' was an equitable one, taking account of all relevant circumstances surrounding a party's omission." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382

(1993). Further, a district court's failure to consider these factors in a denial order constitutes an abuse of discretion. *See e.g., Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d at 1356.

The magistrate therefore abused its discretion when he stated FAMU "must first move to set aside the clerk's default that has been entered against it . . . [and] also properly seek leave to file an out-of-time response to the amended complaint. And when it does so, [it] must establish good cause and excusable neglect, as required by Rule 6(b)(1)(B), if it can." (DC. Dkt. 18). The magistrate applied the wrong legal standard and abused its discretion in three ways.

First, Respondent FAMU's motion falls squarely within the holding in *Perez*, directing that FRCP 55's more flexible standard should have applied. 774 F.3d at 1337. There, the appellee moved for judgment on the pleadings after the appellant failed to timely file an answer to the counterclaim. *Id.* at 1333. The appellant thereafter responded and moved to file an out of time answer. *Id.* The district court denied Perez's motion holding "that even if Perez had not acted culpably and [appellee] faced little prejudice . . . Perez nonetheless had failed to show excusable neglect because her attorney's proffered reason for the delay in filing was insufficient to relieve Perez of the consequences of the missed deadline." *Id.* at 1334. This Circuit reversed that determination finding that "Perez was entitled to have her motion to file an out-of-time answer to the counterclaim considered under the 'good cause'

standard applicable to setting aside a default rather than under the 'more rigorous,' 'excusable neglect' standard." *Id.* at 1338. Because Respondent FAMU failed to timely respond, its unopposed motion should have been reviewed under the less stringent standard. Application of the incorrect standard is reversible error as an abuse of discretion.

Second, even if the Rule 6(b)(1)(B) standard applied, the magistrate's order denying Defendant FAMU's unopposed motion failed to address the *Pioneer* factors rendering it an abuse of discretion. "[W]hether a party's neglect of a deadline may be excused is an equitable decision turning on 'all relevant circumstances surrounding the party's omission.'" *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (citing *Pioneer,* 507 U.S. at 394). Had the magistrate performed the equitable assessment of the record and docket entries cited within Respondent FAMU's motion, he would have recognized the motion argued service of process was potentially improper as alleged in its removal documents. The third *Pioneer* factor is "the reason for delay, including whether it was within the reasonable control of movant," was plainly satisfied by Respondent FAMU's unopposed motion. The remaining *Pioneer* factors also supported granting the unopposed motion because Respondent FAMU did not delay in seeking the extension and Petitioner had agreed to the extension thereby waiving any claim of

prejudice. Therefore, the magistrate's failure to consider *Pioneer* factors in resolving the unopposed motion was an abuse of discretion.

Third, the magistrate's misapplication of the legal standard caused unnecessary delay, hindering Petitioner's discovery and prolonging the case without justification as Respondent FAMU eventually waived the underlying service of process issue 79 days later.[11] Moreover, Respondent FAMU was prejudiced because it was forced to make a Rule 12 motion waiving some of its Rule 12 defenses in lieu of filing a responsive pleading. This judicial overreach is unsupported by law or sound policy because sufficiency of service undergirding the state court default and personal jurisdiction are defenses that could have been addressed in the briefing for a motion to dismiss. Moreover, the indifference in fact caused Respondent FAMU to waive its venue defense. (DC. Dkt. 68)

### III.   The Writ Must Be Appropriate Under the Circumstances

Petitioner understands that mandamus relief is an extraordinary remedy, but it is the appropriate remedy here. This Court found that a writ of mandamus was appropriate in an employment case – *In re BayCare Medical Group, Inc.* – finding the district court had clearly abused its discretion by applying the incorrect legal standard to assess BayCare's privilege claim. This Court concluded that the district

---

[11] The district court alleged that ultimately this called its jurisdiction over the matter into doubt, causing further delay. (DC. Dkt. 67, n. 1).

court's application of this incorrect standard constituted an error of law and that a writ was appropriate because BayCare had no other adequate means to remedy the district court's clear abuse of discretion by ordering disclosure of privileged information during discovery cannot be undone. *See id.*

Here, the same applies. *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) stated: The primary goal of a preliminary injunction is to prevent irreparable harm, ensuring the court can make a meaningful decision on the merits. While this often involves maintaining the status quo, if the status quo causes harm, the court may need to alter it to prevent further injury. The focus should be on preventing harm, not just preserving the status quo. Irreparable harm is presumed in Title VII cases. *Middleton-Keirn v. Stone*, 655 F.2d 609, 612 (5th Cir. 1981). But also, in *Assaf v.al University of Texas System*, that court granted a preliminary injunction to prevent the University of Texas from terminating a professor based on the University's alleged failure to follow its own Rules and Regulations, finding that "[n]ot only will plaintiff suffer loss of income but also academic prestige and research resources which are a sheer necessity to an academician." 399 F. Supp. at 1245-47.

Here too, the writ is appropriate under the circumstances as there is no other relief for Petitioner, an academic. Plus, time is of the essence in matters like these.

**IV.    This case must be reassigned on remand.**

On remand, the lower court judges must be reassigned because they have completely eviscerated the appearance of justice. 28 U.S.C. § 2106 authorizes a court of appeals to "remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." This Circuit has applied this provision to requests for reassignment of trial court judges, so long as the petitioner affirmatively satisfies three questions: "1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to the gains realized from reassignment." *Chudasama*, 123 F.3d at 1373 (citation omitted); *see also United States v. Yesil*, 991 F.2d 1527, 1533 n.7 (11th Cir. 1992) (criminal matter).

To the first prong, both lower court judges have used strong language in the body of their orders against Petitioner, issuing a show cause order against her for the most minor of responsibilities which was not hers (DC. Dkt. 50), meanwhile offering slaps on the wrist to Respondent FAMU in one footnote of a single order. (DC. Dkt. 71, n 1). Specifically, the court has used inflammatory adjectives and fussbudget phrases consistently in its orders,[12]  thereby demonstrating a difficulty, in fact, an

---

[12] *Compare* (DC. Dkt. 10 ("She cannot access her professional e-mail or Defendant's personnel database, cannot teach, and is currently not even permitted to step foot on Defendant's premises.")); with (DC. Dkt. 132) ()); (DC. Dkt. 60 ("hopelessly

inability, of either judge to put "his previous views and findings aside." *See Chudasama*, 123 F.3d at 1373 ("the strong language employed in both the compel order and the sanctions order suggest that the district judge may have trouble putting aside his previous views"). Additionally, even though Petitioner declared that she took the teaching job at a significant pay cut (DC. Dkt. 86-1), the district judge has chided Petitioner as being money-hungry, (DC. Dkt. 10 ("Plaintiff essentially seeks to require Defendant to keep her on its payroll until such time as this litigation is concluded despite the fact that she is already unable to perform the primary functions of her job.")[13]), and he mockingly cited her background of 30 years as a lawyer as a basis for her not being considered *pro se* after Petitioner pointed out that the district court's own rules support that the show cause order was unfairly issued*, see* (DC. Dkt. 53 ("Given Plaintiff's 'three decades of experience' in the legal field, that rationale clearly does not apply in the case at bar."). *See United States v. Torkington*,

---

distinguishable . . . scant evidence")); (DC. Dkt. 80 ("indefinite extension . . . indeterminate period . . . obsolete")); (DC. Dkt. 10 ("Plaintiff essentially seeks to require Defendant to keep her on its payroll until such time as this litigation is concluded despite the fact that she is already unable to perform the primary functions of her job.") (DC. Dkt. 53 ("However, the Court will not entertain the fiction that Plaintiff should be treated like a novice litigant or that Plaintiff lacks the knowledge and experience necessary to coordinate simple meetings between herself and defense counsel.")); and DC. Dkt. 60 ("to the left of the point").

[13] At FAMU's law school, professors are equally evaluated on teaching, scholarship, and service (DC. Dkt. 84-21), which is why Petitioner urged the court to rule on her preliminary injunction before the fall semester; however, that should not prevent granting the preliminary injunction.

874 F.2d 1441, 1447 (11th Cir. 1989) ("For example, the judge stated at various times that he felt the taxpayer had little interest in this type of suit, that this prosecution was "silly," and that it was a waste of the taxpayers' money."). The magistrate also improperly screened Petitioner's CSAC in Doc 134, by stating "[n]or does the Court agree that this matter is particularly "complex." The crux of Plaintiff's claims is that she was unlawfully terminated . . . considering the allegations and claims in the Second Amended Complaint, the Court sees no reason why the parties cannot prosecute this matter within the authorized discovery limits or very nearly within those limits," which are improper factual, dispositive findings and assessment of the pleadings exceeding his authority under 28 U.S.C. § 636 because it is neither within a report and recommendation nor was it made upon referral by the district judge. *See id.* ("He also termed the prosecution a "vendetta" by Rolex Watch against the defendant.").

Finally, and most telling, the district judge refused to correct his own errors with respect to Rule 15 and the changes to the Local Rules. As argued *supra*, the court's local rules eliminated the need to attach a proposed pleading, and despite this change, the district judge essentially required Petitioner to continue attaching proposed pleadings and limited her to the proposed pleading initially filed despite clear and persuasive precedent to the contrary. This blatant refusal is unlike the seasoned chief judge in *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999

F.3d 1247, 1272 (11th Cir. 2021) who corrected orders when he reached the wrong result. ("As to the first factor, Chief Judge Thrash would not have difficulty putting his views aside, as the record indicates he corrects his mistake and amends his orders when he thinks he reached the wrong result.").

To the second prong, any appearance of justice has been obliterated in a number of ways. This Circuit's inquiry and role is to "respond to the appearance of a lack of neutrality and act to preserve in the public mind the image of absolute impartiality and fairness of the judiciary." *Torkington*, 874 F.2d at 1447. First, as evidenced by the magistrate's abrupt and impulsive denial of Defendant FAMU's unopposed motion only to later retreat from his initial position that good cause and excusable neglect had to be shown. And second, the lower court judge's continued impugnment, improper admonishments, disparate treatment of Petitioner's filings compared to Defendant FAMU's filings, and the totality of the circumstances demonstrates actual bias and prejudice towards Petitioner and *pro se* parties completely. This Circuit previously recognized that a "district judge's repeated impugning of the parties' motives in written opinions . . . is cause for concern." *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.,* 809 F.3d 1171, 1194 (11th Cir. 2015). Virtually every order entered by the lower court judges was an

opportunity for them to take a chide at Petitioner, which it did, and rarely the same to Defendant FAMU, although Petitioner was often the only party correct on the law as the court recognized. Therefore, any appearance of justice does not exist before the lower court judges.

To the third prong, it weighs in favor of Petitioner because the district judge has stalemated the case to a point where barely any discovery has been obtained, discovery motions have been prematurely denied without prejudice immediately after the CSAC was struck, and an amended pleading was authorized only recently been accepted on July 10, 2024 (DC. Dkt. 85), but the amended pleading was stricken on July 24, 2024 (DC. Dkt. 132); therefore, the record is not massive as in other cases like MDLs and cases that have proceeded to trial. *See e.g., Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1364 (11th Cir. 2008) (reassignment would entail substantial waste and duplication because another judge would need to become familiar with the massive record.") Additionally, because the record has minimal involvement from Respondent FAMU or the recently added defendants below, "any different judge could quickly become familiar" with this case and handle this matter with impartiality and without bias unlike the assigned judges. *See e.g., Torkington*, 874 F.2d at 1447 (11th Cir. 1989); *Brooks,* 717 F.2d at 1343. Therefore, this factor also weighs in favor of Petitioner.

Accordingly, Petitioner respectfully asks that this case be reassigned on remand for the reasons and affirmative showing made above.

## CONCLUSION

For the reasons stated above, Petitioner respectfully requests that her petition be granted.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 21 because it contains no more than 7,800 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). This document also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using WORD in 14-point Times New Roman.

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 11th Cir. R. 28-1, I hereby certify that on August 11, 2024, I filed the foregoing document via the Court's CM/ECF system, forwarded a copy by email to the Honorable Paul G. Byron and the Honorable Robert M. Norway. I also caused the foregoing to be served by email on the following counsel for Respondents:

Maria Santoro, Esq., msantoro@sniffenlaw.comm
Teresa Ward, Esq., tward@sniffenlaw.com

/s/ Jennifer Smith
Jennifer Smith, *pro se*